UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBIN MCKINNEY AND | * | CIVIL ACTION NO.: 2:20-cv-01169 |
| JEFFREY MCKINNEY, | * | |
| ON BEHALF OF THEIR SON, | * | SECTION: |
| BRICE D. MCKINNEY | * | |
| Plaintiffs | * | JUDGE:  LANCE M. AFRICK |
| | * | |
| VERSUS | * | MAGISTRATE:  MICHAEL B. NORTH |
| | * | |
| SUPERIOR VAN & MOBILITY, L.L.C. | * | |
| AND ELECTRONIC MOBILITY | * | |
| CONTROLS, L.L.C. | * | |
| Defendants | * | |

**************************************************************************

**ELECTRONIC MOBILITY CONTROLS, L.L.C.**
**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, Electronic Mobility Controls, L.L.C., submits this memorandum in support of

Motion for Summary Judgment as to plaintiffs' product defect claims and lack of causation.

## INTRODUCTION

### A. Statement of Case

Plaintiffs, Robin and Jeffery McKinney (McKinneys"), filed suit on behalf of their son,

Bryce McKinney ("Bryce"), against EMC and Superior Van & Mobility, LLC ("Superior")

seeking to recover damages arising out of a single car incident Bryce McKinney was involved in

on October 16, 2019 on Interstate 12 near Hammond, Louisiana.[1]

Plaintiffs have asserted multiple claims against EMC, including Louisiana Product

Liability Act ("LPLA") Claims, Redhibition Claims, and Negligence Claims.[2]

---

[1] Doc. No. 1 - 2.
[2] Id. Doc. No. 1 - 2 at ¶ 24-26, 31, 45; Plaintiffs' Non-LPLA and non-redhibition claims are the subject of a separate Motion for Summary Judgment based on the exclusivity provision of the LPLA.  Plaintiffs and

### B. Background On Purchase And Installation Of The Equipment

In 2007, Bryce sustained a spinal cord injury while playing football.[3]  Even though Bryce underwent a three-level cervical fusion, he nevertheless retained some mobility in his upper extremities.[4]   While enrolled at Southeastern University, Bryce contacted Louisiana Rehabilitation Services ("LRS")[5] regarding state assistance in securing mobility equipment for a van he planned to purchase.[6]

Subsequent to multiple evaluations, Janice Girouard prepared a Report of Vehicle Modifications ("Report"), which specified certain mobility equipment for the van, including certain EMC equipment.[7]   Based on the specifications in the Report, Superior purchased the equipment from EMC[8] and then installed the EMC equipment in the McKinneys' van.

### C. Accident

On October 16, 2019, Bryce was operating his Ford van with a utility trailer in tow in a westerly direction on Interstate 12 in Tangipahoa Parish, Louisiana.[9]  According to the petition, as Bryce attempted to pass an eighteen-wheeler, the van, on its own accord, drifted back across

---

EMC have reached an agreement on a stipulation for the dismissal of the failure to warn claim, breach of expressed warranty claim, and the redhibition claim.

[3] See Exhibit "A", Deposition of Bryce McKinney, pg. 35, lines 2 – 25.

[4] Id.

[5] LRS is a state agency within the Louisiana Department of Labor which "assists persons with disabilities in their desire to obtain or maintain employment and/or achieve independence in their communities by providing rehabilitation services and working cooperatively with business and other community resources."   This   includes   addressing   an   individual's   transportation   needs. http://www.laworks.net/workforcedev/lrs/lrs_main.asp

[6] See Exhibit "A", Deposition of Bryce McKinney,  pg. 85, line 12 – pg. 86, line 12.

[7] See Exhibit "B", Report of Vehicle Modifications which was attached to Stephen Angelloz Deposition as Exhibit 24.

[8] See Exhibit "C", Deposition of Stephen Angelloz, pg. 283, line 18 – pg. 284, line 13.

[9] Doc. No. 1-2.

2

the right lane, off the lanes of travel, and into a wooded area where the van eventually struck a tree, injuring him.[10]

## LAW AND ARGUMENT

### A.  Federal Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides in pertinent part that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

F.R.C.P. 56.  There is no genuine issue for trial unless there is sufficient evidence favoring the non-movant for a jury to return a verdict for that party.  Wheeler v. Miller, 168 F.3d 241, 247 (5th Cir. 1999).  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  Id.; See also, Blair v. Sea Lift, Inc., 91 F.3d 755 (5th Cir. 1996). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, no genuine issue exists for trial.  U.S. v. Robinson, 78 F.3d 172, 174 (5th Cir. 1996).  Summary Judgment is appropriate in any case where critical evidence is so weak and tenuous on an essential fact that it could not support a judgment in favor of the non-movant. Little v. Liquid Air. Corp., 37 F.3d 1069, (5th Cir. 1994).

If the movant satisfies its initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party cannot rely on argument alone.  Tauzier v. Dodge, 1998 WL 227170 (E.D. La. 1998).  "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movants burden."  Douglass v. United Serv. Auto. Assn., 79 F.3d 1415, 1429 (5th Cir. 1996).  Rather, the non-moving party must direct the Court's attention to admissible evidence in the record which demonstrates that it can convince a "fair

---

[10] Id. at ¶ 14.

minded jury" that it is entitled to a verdict in its favor.  Conti Community Serv., Inc. v. Ragan, 63 F.3d 438, 411 (5th Cir. 1995); International Shortstop, Inc. v. Rally's Inc., 939 F.2d 1257, 1263 (5th Cir. 1991).  The non-moving party must identify specific evidence in the record and articulate the precise manner in which that evidence supports its claim.  Ragan, 63 F.3d at 411. While the Court will resolve factual controversies in favor of the non-moving party, the Court will not assume the non-moving party could or would prove necessary facts in the absence of proof.  Little Liquid Air. Corp., 37 F.3d at 1075 (5th Cir. 1994).  If the evidence is insufficient to establish the existence of an element essential to the non-moving party's case, and on which the party will be the burden of proof at trial, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265. (1986).

The requirements for proving a defective product under The Louisiana Products Liability Act ("LPLA") have been clearly delineated, well defined, and consistently applied by both statute and federal jurisprudence.  In light of the requirements set forth by the LPLA, defendant is entitled to judgment in its favor because plaintiff has failed to produce any evidence that any of the EMC equipment was unreasonably dangerous in design or unreasonably dangerous in composition or construction by which a reasonable juror could return a verdict in their favor.[11] Thus, summary judgment on these claims is warranted.

### B. Plaintiff Cannot Establish A *Prima Facie* Case Under The Louisiana Products Liability Act

The LPLA establishes the exclusive theories against manufacturers for damages caused by their products.  La. R.S. 9:2800.52.  Pursuant to the LPLA, the manufacturer of a product

---

[11] Plaintiffs and EMC has reached an agreement on a stipulation on the as to the dismissal of the failure to warn claim and breach of expressed warranty claim.   Accordingly, defect in design and defect in manufacturing are the only two remaining LPLA claims.

shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity. La. R.S. 9:2800.54; Jefferson v. Lead Indus. Ass'n, Inc., 106 F.3d 1245, 1250-51 (5th Cir. 1997). The LPLA further provides the four (4) exclusive theories under which a manufacturer may be held liable:

> B.    A product is unreasonably dangerous **if and only if:**
>
> (1)    the product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
>
> (2)    the product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
>
> (3)    the product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57;
>
> (4)    the product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58. (Emphasis added)

La. R.S. 9:2800.54(B); Jefferson, 106 F.3d at 1250-1251. Under Louisiana law, the above are the exclusive theories of liability against manufacturers for damages allegedly caused by their products. Brown v. R.J. Reynolds Tobacco Co., 52 F.3d 524, 526 (5th Cir. 1995); Lewis v. Intermedics Intraocular, Inc., 56 F.3d 703, 706 (5th Cir. 1995). Finally, a claimant seeking recovery under the LPLA bears the burden of proving the existence of an unreasonably dangerous defect by a preponderance of evidence. La. R.S. 9:2800.54(D).

## C.  The McKinneys Cannot Prove the EMC
## Equipment Was Unreasonably Dangerous in Design

The McKinneys have alleged the EMC equipment was unreasonably dangerous in design.[12]  However, the McKinneys have failed to provide any evidence to prove this theory of liability under the LPLA.

Specifically, La. R.S. 9:2800.56 which governs design defects provides:

> A product is unreasonably dangerous in design if, at the time the product left the manufacturer's control:
>
> (1)      there existed an alternative design for the product that was capable of preventing the claimant's damage; and
>
> (2)      the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.  An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

La. R.S. 9:2800.56.  See, also Morgan v. Gaylord Container Corp., 30 F.3d 586 (5th Cir. 1994).  Importantly, Louisiana law does not allow a fact finder to presume the existence of a vice or defect in the design of a product merely because an injury occurred.  McCarthy v. Danek Medical, Inc., 65 F.Supp. 410 (E.D. La. 1999); Jaeger v. Automotive Cas. Ins. Co., 1995-2448 (La. App. 4 Cir. 10/9/96), 682 So.2d 292.

During the course of this litigation, EMC propounded Interrogatories to the McKinneys, received the report from the McKinneys' liability expert, L. Wayne McCracken ("McCracken"), and deposed McCracken.

---

[12] Document No. 1-2, Complaint at ¶ 24 -26.

### i.  Plaintiffs' Answers to Interrogatories

Through written discovery, EMC specifically requested the McKinneys to identify all design defects and all facts and witnesses which support their contention that the EMC equipment was unreasonably dangerous in design:

> **INTERROGATORY NO. 6:**
> Please describe in detail each and every design defect that you contend existed in the EMC equipment.
>
> **RESPONSE TO INTERROGATORY NO. 6:**
> Plaintiffs object to this interrogatory to the extent it calls for a legal conclusion and/or expert opinion.  Plaintiffs further object to this interrogatory as premature as discovery is ongoing.  Plaintiffs reserve the right to supplement this response.[13]

Thus, plaintiffs written answers to interrogatories do not identify a design defect.

### ii.  McCracken Report

During discovery, plaintiff produced McCracken's November 18, 2020 report.[14] However, absent from the report is any statement identifying a particular EMC part as defective in design.  Rather, the only conclusion in the report regarding defect in design is that:

> The braking deficiencies that this vehicle experienced are, most probably, due to the design, manufacture, or installation of the handicapped system by Superior/EMC.[15]

The McCracken report does not identify a particular EMC part which was defective in design nor does the report identify an alternative design of any of the EMC parts.

---

[13] See Exhibit "D", Bryce McKinney's Answers to Interrogatories propounded by EMC.
[14] See Exhibit "E", McCracken Engineering Report dated November 18, 2020.
[15] Id. at pg. 6.

3283129 v1

### iii.  McCracken Testimony

Expectedly, McCracken's failure to identify a particular EMC part which was defective in design or identify an alternative design for an alleged defectively designed particular EMC part were topics that were explored extensively in McCracken's deposition.

> Q.     And if you're in paragraph 5, it says "The braking deficiencies that this vehicle experienced are, most probably, due to the design, manufacture, or installation of the handicapped system by Superior/EMC."  My question is, as referenced in your November 18 report, what is the design defect?
>
> A.     Good question.  **The fairest answer is I don't' know**.  The design defect resulted in a lack of braking.[16]  (Emphasis Added)
>
> . . .
>
> Q.     You can tell me if you believe there was a piece that was improperly designed or improperly manufactured, you can't do that at this point?
>
> A.     Designed or manufactured, you're right.  **I don't think I can do that**.  . . . [17]  (Emphasis Added)
>
> . . .
>
> Q.     And with all due respect, sir, I'm, asking you about a defect in design, not about the manual yet, but the defect in design.  Have you identified with respect to your new opinion, a defect in design of the braking system?
>
> A.     I think the answer is no.
>
> Object to Form.[18]

The dismissal of plaintiff's defective design claim is supported by the jurisprudence.  In

St. Paul Fire & Marine Ins. Co. v. Caterpillar, Inc., 2012 WL 892234 (E.D. La., March 14,

---

[16] See Exhibit "F", Deposition of Wayne McCracken, pg. 132, lines 16 -25.
[17] Id. at pg. 243, lines 4 – 14.
[18] Id. at pg. 66, lines 10 - 15.

2012), St. Paul, as subrogee of its insured, filed suit against Caterpillar under the LPLA for damages arising out of a fire involving a piece of Caterpillar equipment.  Caterpillar filed a Motion for Summary Judgment seeking dismissal of St. Paul's claims for defective design.  In granting Caterpillar's motion, the trial court noted that plaintiff's expert, who did not have the design specifications for the product, specifically testified he did not have an opinion as to whether the product was improperly designed.  Based on this testimony, the trial court concluded that plaintiffs failed to meet their burden of proof under La. R.S. 9:2800.56 and dismissed plaintiffs' defective design claims.  Id. at *6.

Not only should the plaintiff's defect in design claim be dismissed because McCracken did not identify a defect in design, but McCracken also failed to identify an alternative design that existed and was capable of preventing plaintiff's injury.[19]  The Fifth Circuit has held that in order to demonstrate that a product is unreasonably dangerous in design, the plaintiff must: (1) identify a specific alternative design that existed and was capable of preventing her injury; and (2) perform the requisite risk utility analysis.  Krummel v. Bombardier Corp., 206 F.3d 548,551 (5th Cir. 2000); Lavespere v. Niagra Mach. & Tool Works, Inc., 910 F.2d 167, 183 (5th Cir. 1990).  Further, the proposed alternative design must be reasonably specific and **not based on mere speculation**.  Milton v. Rapiscan Security Products, 2005 WL 1400433 (E.D. La. 2005) (emphasis added).

Absent from McCracken's report is any conclusion regarding alternative designs which were available at the time the EMC equipment the manufacturer and which may have prevented

---

[19] See Exhibit "E ," McCracken Engineering Report dated November 18, 2020.

McKinney's incident.[20] Further, McCracken has failed to offer any specific testimony regarding alternative designs to the EMC equipment which could have prevented McKinney's incident.

In <u>McCarthy v. Danek Medical, Inc.</u>, 65 F.Supp.2d 410 (E.D. La. 1999), a spinal fusion patient filed suit against the fixation device manufacturer under the LPLA following failure of the fusion.  The manufacturer filed a Motion for Summary Judgment asserting that the patient failed to adequately state a claim that the device was unreasonably dangerous in design under the LPLA.  In granting the manufacturer's motion, Judge Lemelle found that in order to avoid a summary judgment on the claim of defective design, the patient must present "competent evidence" of an alternative design.  <u>Id.</u> at 411.  In that matter, Judge Lemelle found that the patient presented no evidence expert evidence to support a claim that an alternative design exists or to identify an alternative design.  <u>Id.</u>  Failure to do so leaves no issue of material fact.  <u>Id.</u> at 412.

Further, in <u>Morgan v. Gaylord Container Corp.</u>, 30 F.3d 586 (5th Cir. 1994), a worker injured when she slipped and fell at the paper mill at which she was working filed suit under the LPLA against the manufacturer of a pump she alleged leaked the water on which she slipped. The district court granted defendant's motion for summary judgment finding the subject pump was not defective in design.  In affirming the district court's dismissal of plaintiff's defective design claim, the Fifth Circuit noted that to withstand defendant's motion, plaintiff was required to prove "safer alternative designs <u>were in existence</u> at the time the pump left [defendant's] control and the risk avoided by such designs outweighed the burden of adopting the designs." <u>Id.</u> at 590.  Further, the court found that the opinion of plaintiff's expert failed to assert "the

---

[20] <u>Id.</u>

suggested design alternatives were in existence at the time the pump left [defendant's] control." Id.

Here, McCracken failed to offer an opinion in his report and likewise failed to offer any testimony during his deposition of alternative designs which may have prevented McKinney's harm. Consequently, plaintiffs have also failed to meet the alternative design requirement of R.S. 9:2800:55.

### iv.  McCracken's "New" Opinions

When asked to confirm that all of his opinions were set forth in his November 18, 2020 report, McCracken testified that the night before his deposition he reviewed post collision photographs with plaintiff counsel and now believed that there was an installation issue with respect to the gas/brake system which had been completed five years earlier and this alleged installation error may have been the result of the instructions in the installation manual.[21]

Since McCracken admitted he had not disclosed any opinions in his report addressing the EMC installation manual, he attempted to couch his new opinion in terms of a design defect opinion. He alleged that there was a defective in the installation manual – a design defect "because the instructions on the installation of the gas/brake system combined with the lack of the requirement as part of the design to test and document the braking capability was proper" was not present.[22] This is simply not a valid design opinion for multiple reasons.

First, it is not an opinion regarding design at all. R.S. 9:2800.53(3) defines a "product" as "a corporeal movable that is manufactured for placement into trade or commerce". As a result, defect in design as to be premised on some defined object. While a particular EMC part

---

[21] See Exhibit "F", Deposition of McCracken at pg. 55, line 22 – pg. 56, line 15; pg. 59, line 9 – 23; pg. 60, line 10 – pg. 61, line 14; pg. 62, lines 12 – 24.  The EMC equipment was shipped to Superior in the summer of 2014 the McKinneys took possession of the vehicle in November 2015.
[22] Id. at pg. 350, line 6 -17.

11

would be considered a "corporeal movable that is manufactured for placement into the stream of commerce", the installation manual in no way meets the definition of a "corporeal movable placed into trade or commerce."   Support for this conclusion may be found in <u>Johnson v. Transwood, Inc.</u>, 2015 WL 5680369, (M.D. La. 2015), wherein the court  concluded that the claim that "the failure of Muncie to provide adequate instructions that the safety guard must be used in conjunction with the PTO renders the product unreasonably dangerous in design" "are more appropriately applied to a failure to warn claim. at *5.  Accordingly, plaintiffs cannot assert that an alleged issue with respect to the installation manual is a design defect claim.

Second, the "new" opinion is untimely.  Pursuant to the court's scheduling order, the parties were allowed to set their deadlines for expert reports as longs as those deadlines did not impact the motion deadline, pretrial conference or the trial date.[23]  In accordance with the court's order, November 8, 2020[24] was agreed to for plaintiff's liability expert report and December 7, 2020 was agreed to for defendants' liability expert reports.  There is no issue with either of these reports.  Importantly, McCracken admitted that the delay in disclosing his opinion was simply the result of his own failure to analyze the photographs he had been provided early on in this matter testifying:

> Q.    But would it be fair to say that the reason that your new opinion, the one developed last night, was not included in your November 18 report was simply your failure to the appreciate the condition of the brake installation?
>
> Object to form.

---

[23] Doc. No. 24.
[24] McCracken's November 8 and November 18 are the same except for updated citations to deposition testimony since McCracken used a draft deposition for his November 8 report's citation and a final version of the deposition for his November 18 report.  There is no timeliness issue with respect to these reports.

A.  I'll give you that one.  Sure.[25]

Given the late nature of the disclosure and lack of justification for the late disclosure, the "new" opinions of McCracken concerning the installation and installation manual should be stricken as untimely.  This is particularly true in light of the pretrial order which provides "[t]he Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to witnesses and/or exhibits, without an order to do so issued on a motion for good cause."[26]   Since there has not been a motion for good cause filed concerning the inclusion of the "new" opinion, the "new" opinion should be stricken.

The third reason the "new" opinion should be stricken is on the grounds that McCracken does not have the requisite knowledge, skill, experience, training or education to testify in the form of an opinion or otherwise on the issue of whether an installation manual for mobility equipment is sufficient or insufficient in how it sets forth its instructions. McCracken is a mechanical engineer and accident reconstruction expert.  However, by his own admission, McCracken does not have any expertise, knowledge, skill, experience, training or education with respect to preparing or writing installation manuals.  Likewise, McCracken has no experience in the design or operation of mobility equipment.  Not surprisingly, he has never been tendered or accepted as an expert in either state or federal court in human factors or as an expert in how an installation manual should be written.  In this regard, McCracken testified:

> Q.     Sure.  How many instruction manuals have you written in
>        your experience?
>
> A.     Have I written directly, none that I can think of.
>
> Q      Do you have any formal education in terms of how to
>        prepare an instruction manual or assembly manual?

---

[25] See Exhibit "F", Deposition of Wayne McCracken, pg. 69, lines 11 - 19.
[26] Doc. 9 at pg. 3.

A        No.

Q.       Do you have any information, education, any of the courses
         that we talked about at the beginning of this deposition that
         talked about how to draft an instruction manual?

A.       How to draft an instruction manual, no. [27]

                                    . . .

Q.       Mr. McCracken, do you have any experience in the design
         of a drive-by-wire system.

A.       No, I do not.  I mean, as far as experience in designing one
         personally, the answer would be no.[28]

                                    . . .

Q.       Do you have any training in the operation of a vehicle with
         handicap controls like that were in the McKinney van?

A.       None beyond what I've read in this case.[29]

                                    . . .

Q.       Have you been tendered in court before as an expert on the
         wording of instruction or assembly manual?

A.       Not that I recall, no.[30]

Hence, McCracken has no knowledge, skill, experience, training or education on which to base

an opinion on the sufficiency of the instructions in the installation manual that he developed on

the night before his deposition and McCracken should not be allowed to testify regarding the

sufficiency of the EMC installation manual.

---

[27] See Exhibit "F", Deposition of Wayne McCracken, pg. 368, line 22– pg. 369, line 9.
[28] Id. at pg. 40, line 25 – pg. 41, line 5.
[29] Id. at pg. 41, lines 13 – 16.
[30] Id. at pg. 369, lines 10 -13.

Fourth, pursuant to <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 592–93, (1993), trial courts are to act as "gatekeepers," making a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." The gatekeeping function is meant to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but [also] reliable." <u>Id.</u> at 589.

The plaintiff must prove by a preponderance of the evidence that McCraken's opinion complies with Federal Rule of Evidence 702.  Moreover, when expert testimony is challenged under <u>Daubert</u>, the party seeking admission of the testimony bears the burden of establishing that the testimony is reliable and relevant, and that there is a "fit between the opinion and the facts of the case." <u>Moore v. Ashland Chemical, Inc.</u>, 151 F.3d 269, 276 (5th Cir.1998), <u>cert. den.</u>, 526 U.S. 1064 (1999).  In this regard, the Fifth Circuit has excluded experts who could only connect the facts of the case to her conclusions through "because I said so" logic.  <u>See</u>, <u>e.g.</u> <u>LeBlanc ex. rel. Estate of LeBlanc v. Chevron USA, Inc.</u>, 36 F. App'x 94, 99-100, (5th Cir. 2010) (affirming the district court's exclusion of expert testimony on the grounds that the expert's opinion lacked "some demonstrable and reliable basis in the underlying facts").

Here, McCracken's "new" opinion concerning the installation manual is simply "because I said so logic" particularly in light of the fact he only at looked a few pictures and a few pages of the installation manual on the night before his deposition.  While he commented on the lack of specificity in manual regarding the initial for the installation process for the brake pedal extension, he admitted that the alleged inadequacy of the instructions is merely a thought and that "it is just not – in my mind, it is not adequate".[31]  What is in McCracken's mind is not a

---

[31] <u>Id</u>. at pg. 374, lines 7-23.

standard or based on any methodology, much less accepted methodology. Rather, such comments are merely speculation and no more that "because I said so logic". This is especially true in light of the fact that the EMC equipment was installed by Superior employees who have been through the EMC certification process.[32] The issue of the unreliability of McCracken's opinions is further demonstrated by his admission that he did read the entire manual so as to understand all of the requirements of the EMC installation manual.[33] Accordingly, for the reasons set forth above McCracken's "new" opinions should be stricken on the grounds it fails to meet the requirement of Federal Rule of Evidence 702 and therefore cannot support a design defect claim.

### D.  McKinneys Cannot Prove The EMC Equipment Was Unreasonably Dangerous Due To Construction or Composition

Plaintiffs have alleged the EMC was unreasonably dangerous in construction or composition.[34] However, plaintiffs cannot offer adequate evidence to support this claim.

La. R.S. 9:2800.55 provides:

> A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.

To establish that a product was unreasonably dangerous in construction or composition, a claimant must demonstrate what a manufacturer's specifications or performance standards are

---

[32] See Exhibit "G", Deposition of Phil Nuza, pg. 20, line 16 – pg. 21, line 12.
[33] Id. at pg. 381, lines 5-14.
[34] Subsequent to EMC's sale of the EMC equipment to Superior and during the installation process an aluminum bar was installed on top of the gas/brake lever. The installation of the aluminum bar was done without the knowledge or consent of EMC and was contrary to the EMC installation manual. See Exhibit "F", Deposition of Wayne McCracken pg. 163 line 17 – pg. 165, line 10. Hence, any claim of defect in construction or composition premises on the installation of the aluminum bar cannot be asserted against EMC as EMC had no knowledge of the installation.

16

for a product **and how the product in question materially deviated from those standards** to render it unreasonably dangerous.  Milton v. Rapiscan Security Products, 2005 WL 1400433 (E.D. La. 2005). (Emphasis added).  Moreover, under Louisiana law, a trier of fact may not infer the existence of a vice or defect in a product merely based on the fact an accident occurred.  Jaeger v. Automotive Cas. Ins. Co., 1995-2448 (La. App. 4 Cir. 10/9/96), 682 So.2d 292.

Plaintiffs have failed to develop any evidence as to how any EMC part deviated from the manufacturer's specifications or performance standards.

### i. Plaintiffs' Answers to Interrogatories

Through written discovery, EMC specifically requested the McKinneys to identify all manufacturing defects and all facts and witnesses which support her contention that the EMC equipment had a manufacturing defect:

> **INTERROGATORY NO. 11:**
> Please identify all facts and witnesses which support your contention that the EMC equipment was unreasonably dangerous in construction or composition.
>
> **ANSWER TO INTERROGATORY NO. 11:**
> Plaintiffs object to this interrogatory as premature as discovery is ongoing.  Plaintiffs will identify their expert and produce any reports authored by those expert witnesses in accordance with the agreed-upon deadline of October 16, 2020.[35]

Thus, plaintiffs written answers to discovery do not identify a manufacturing defect.

### ii. McCracken Report

McCracken's November 18, 2020 report does not identify a particular EMC part that was defective in construction or composition.[36]  Rather, the only conclusion in the report  regarding manufacture is that:

---

[35] See Exhibit "D," Bryce McKinney's Answers to Interrogatories propounded by EMC.
[36] See Exhibit "E," McCracken Engineering Report dated November 18, 2020.

3283129 v1

> The braking deficiencies that this vehicle experienced are, most probably, due to the design, manufacture, or installation of the handicapped system by Superior/EMC.[37]

Hence, the McCracken Report does not identify a particular EMC part which was defective in construction or composition.

### iii.  McCracken Testimony

McCracken's failure to identify a particular piece of equipment that was defective in construction or composition was explored in his deposition.

> Q.   You can tell me if you believe there was a piece that was improperly designed or improperly manufactured, you can't do that at this point?
>
> A.   Designed or manufactured, you're right.  I don't think I can do that. . . . [38]
>
> . . .
>
> Q.   So, with respect to the EMC equipment, you're not going to have an opinion or you are not going to offer testimony that there was a defect in constructional [or] composition with respect to the EMC equipment.
>
> A.   I think that is fair.
>
> Object to form of the question.[39]

There is no evidence that any of the EMC equipment did not conform to the EMC specifications.

As such, McCracken could not identify of a particular EMC part that did not conform to EMC's specifications.  Accordingly, plaintiffs' manufacturing defect claim should be dismissed.

---

[37] Id. at pg. 6.
[38] See Exhibit "F", Deposition of Wayne McCracken, pg. 243, lines 4 –14.
[39] Id. at pg. 367, line 21 – pg. 268, line 1.

**E.  Addition of the Aluminum Bar and Change in
Design Eliminates Recovery Pursuant to R.S. 9:2800.54(C)**

During the installation process, an aluminum extension bar was added to the top of the gas/brake lever with the input and direction from the evaluator, Chad Strowamtt.[40]  Importantly, it is undisputed that the aluminum bar was added without any input from EMC and was contrary to the EMC manual.[41]  More importantly, according to McCracken, "the installation of the aluminum extension bar was a change in design of the gas/brake system designed by EMC." [42] The change in design in the gas/brake system is significant in light of McCracken's opinion that "the geometry of the system is going to be radically changed by this extender bar" and [m]ore probably than not contributed, yes."[43]

As set forth above, product is "unreasonably dangerous" under the LPLA in one of four ways: (1) construction or composition; (2) design; (3) inadequate warning; or (4) failure to conform to an express warranty.  L.S. R.S. 9:2800.54(B).  The "unreasonably dangerous" characteristic must exist at the time the product left the manufacturer's control or result from a reasonably anticipated modification or alteration of the product.  L.S. R.S. 9:2800.54(C).

Here, neither requirement is present.  The addition of the aluminum bar which McCraken contends radically changed the geometry of the gas/brake lever is in no way a reasonably anticipate use especially since modifications or changes are prohibited by the EMC installation manual.[44]  Second, because the addition of the aluminum bar radically changed the geometry of gas/brake lever after it left the control of EMC and the changed lever, according to McCracken,

---

[40] Id. at pg. 163, line 2 – pg. 165, line 11.  See also Exhibit "H", photograph of the aluminum bar attached to the Deposition of Bryce McKinney as Exhibit No. 1.
[41] See Exbibit F, Deposition of McCracken at pg. 163, line 2 – pg. 165, line 11.
[42] Id. at pg. 165, lines 8 – 11.
[43] Id. at pg. 276, line 14 – pg. 277, line 3.
[44] Id.

19

was a contributing factor to the incident,[45] EMC cannot be liable for a design defect after such

significant modifications pursuant to R.S. 9:2800.54(C).

### F.  Lack of Evidence and Causation with Respect to the Installation and Manual

McCracken's "new" opinion, which is based on a few post collision photographs he

reviewed the night before his deposition is that he now believes there was a potential  installation

issue with respect to the installation of the gas/brake system, which was installed by Superior

five years earlier, and this alleged potential installation issue may be the result of the instructions

in the installation manual.[46]  McCracken's supposition of an installation issue is undermined by

his own admission that he does not know whether the original installation was done properly.[47]

Importantly, McCracken went on to admit that he did not have any evidence that the as to

whether the EMC equipment was installed correctly or incorrectly. He specifically testified that:

> Q.    But your're not aware of how the original installation took
> place and whether it was installed correctly when it was
> first installed?
>
> A.    No. And I'm somewhat critical of Superior on hath issue
> because these days it's so easy to take a few photographs of
> the installation system if for no other reason to just verify
> you did the install correct.  Yet, I have seen nothing from
> Superior that indicates that they took any photographs at all
> of the system as it was installed in the McKinney's van.[48]

Absent knowledge of the install condition five years earlier, McCracken cannot now speculate as

to  whether  the  install  was  done  properly  are  not.   Accordingly,  any  claim  as  to  improper

---

[45] Id.

[46] Id. at pg. 55, line 21 – pg. 56, line 14; pg. 59, line 8 – 22; pg. 60, line 9 – pg. 61, line 13; pg. 62, lines 11 – 23.  The EMC equipment was shipped to Superior in the summer of 2014 the McKinneys took possession of the vehicle in November 2015.  As of October 8, 2019, the McKinneys had driven the vehicle for over 67,000 miles in five years since the EMC equipment was installed.  See Exhibit "I", Superior Van 78.

[47] See Exhibit "F", Deposition of McCracken, pg. 269, lines 7 -17.

[48] Id. at pg. 269, lines 7- 17.  See Exhibit "H", picture of the aluminum bar identified by Bryce McKinney in his deposition and attached as Exhibit "1" to the deposition.  EMC04080.

installation and, in turn installation instructions is without an supporting evidence and foundation and should be dismissed.

Notwithstanding the lack of evidence on the issue of the installation manual, there is a lack of causation.  In Pickett v. RTS Helicopter, 128 F. 3d 925 (5th Cir. 1997), the survivors of a helicopter pilot who perished in a crash when his seatbelt failed filed suit against the seatbelt manufacturer and owner of the helicopter asserting design and warning theories of liability under LPLA.  The survivors first asserted that the seat belt was defective in design because it could be disassembled and incorrectly reassembled in a way that made it likely to fail in a crash. The court noted that under their reasoning, the capability of improper assembly was the characteristic of the seat belt that caused the death of their husband and father.  Id. at 928. Because there existed alternative designs at the time of manufacture that did not have this characteristic, plaintiffs asserted that the design of the seatbelt was defective. Alternatively, the plaintiffs asserted that the seat belt was unreasonably dangerous because there was no adequate warning of the capability of improper assembly.  Id. at 929.

Initially, the Fifth Circuit noted that under either theory (design or warning) the plaintiffs must also establish that the actual failure of the seat belt (and thus the decedent's death) was proximately caused by the capability of improper assembly.  The court then cited its decision in of Graham v. Amoco Oil Co., 21 F.3d 643 (5th Cir.1994), even though an LPLA, where the court held that proximate cause is " 'any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred.' "  Id. at 648–49 (quoting Sutton v. Duplessis, 584 So. 2d 362, 365 (La. App. 1st Cir. 1991).  The court further observed where "an accident results from two negligent acts, 'one more remote and one an intervening cause, the presence of the

intervening cause prevents a finding of liability on the one responsible for the more remote cause.' " Id.

Applying Graham, the court observed:

> [I]t is clear that the failure of the seat belt in this case was not proximately caused by the mere capability of misassembly inherent in its design. Actual failure simply could not have occurred without actual negligent misassembly, here, presumably by Aircraft Belts, and this actual misassembly is an intervening cause that breaks the "natural and continuous sequence" of events flowing from the design. . . . Although PSC, the seatbelt manufacturer, may have established a prerequisite to the eventual injury by designing a seat belt that *could* be misassembled, PSC did not proximately cause that injury because, as a matter of law, the *actual* misassembly sufficiently intervened to break the causal chain. For this reason, the Picketts' LPLA claims cannot succeed. Pickett, 21 F.3d at 929.  (Emphasis in original.).

No matter whether the plaintiffs' claims are premised on design or warning, the installation of the gas/brake system was done by Superior.  Applying Pickett to the instant matter, any alleged improper installation by Superior sufficiently intervened and for this reason plaintiffs' LPLA claims in the instant matter cannot succeed either.

## G. No Evidence to Support any Other Claim/Lack of Causation

EMC has filed a Motion for Summary Judgment on the exclusivity of claims which may be asserted against a manufacturer, like EMC, because of the exclusivity provisions in La. R.S. 9:2800.54(B) which sets forth the only theories of liability for a claim against a manufacturer. To the extent there is a potential claim outside of the LPLA, EMC moves to dismiss that claim on the grounds that he has not identified a condition in the vehicle created by EMC which caused the incident at issue and, to the extent, McCracken offers any such opinions,  there is no evidence to support such a claim as the opinions of McCracken do not meet the requirements of Federal Rule of Evidence 702 and should be stricken.

3283129 v1

## CONCLUSION

For the foregoing reasons, the McKinneys cannot establish the necessary elements to support their claims that the EMC equipment was defective in design or manufacturer.  As such, EMC's Motion for Summary Judgment should be granted and the McKinneys' claims should be dismissed.

Respectfully submitted,

**BLUE WILLIAMS, L.L.P.**

*/s/ Paul D. Palermo*
**PAUL D. PALERMO (#19725)**
**CRAIG V. SWEENEY (#23954)**
**ELIZABETH S. SCONZERT (#30049)**
3421 N. Causeway Blvd., Suite 900
Metairie, Louisiana  70002
Telephone:  (504) 831-4091
Facsimile:  (504) 837-1182
ppalermo@bluewilliams.com
csweeney@bluewilliams.com
esconzert@bluewilliams.com
Attorneys for defendant,
Electronic Mobility Controls, L.L.C.

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of December 2020, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all known counsel of record by operation of the Court's electronic filing system.

*/s/ Paul D. Palermo*
PAUL D. PALERMO

3283129 v1