UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBIN MCKINNEY AND | * | CIVIL ACTION NO.: 2:20-cv-01169 |
| JEFFREY MCKINNEY, | * | |
| ON BEHALF OF THEIR SON, | * | SECTION: |
| BRICE D. MCKINNEY | * | |
| Plaintiffs | * | JUDGE: LANCE M. AFRICK |
| | * | |
| VERSUS | * | MAGISTRATE: MICHAEL B. NORTH |
| | * | |
| SUPERIOR VAN & MOBILITY, L.L.C. | * | |
| AND ELECTRONIC MOBILITY | * | |
| CONTROLS, L.L.C. | * | |
| Defendants | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ELECTRONIC MOBILITY CONTROLS, L.L.C.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO THE PLAINTIFFS' PRODUCT DEFECT CLAIMS AND LACK OF CAUSATION**

Defendant, Electronic Mobility Controls, L.L.C., ("EMC") submits this reply memorandum in support of Motion for Summary Judgment as to plaintiffs' product defect claims and lack of causation.

**A. New Opinions**

During his deposition on December 16, 2020, Wayne McCracken ("McCracken") offered the following new opinions concerning EMC: (1) that the roller for the gas brake system should have been composed of an undefined sturdier material; and (2) the instructions in the EMC installation manual were inadequate.[1] McCracken attempted to cover up his failure to timely disclose his new opinions by claiming he simply failed to appreciate the condition of the brake installation until the night before his deposition.[2]

---

[1] See Doc. No. 58, Plaintiffs' Opposition to EMC's Motion for Summary Judgment, at pg. 3.
[2] See Exhibit "A," Deposition of Wayne McCracken, pg. 69, lines 11 - 19.

The opinion that the roller for the gas brake system should have been composed on an undefined sturdier material is clearly an alternative design opinion. However, absent from McCracken's report is any reference to the roller, the condition of the roller, wear on the roller or an alternative design for the roller.[3] Likewise, while McCracken claims that his review of the post-collision photographs of the roller's post-accident condition only support his position that there were braking issues with respect to the subject van, whether the installation of the roller for the gas brake system was proper or whether the EMC installation manual's instructions were adequate are two separate new opinions. A review McCracken's report clearly demonstrates there are no criticisms of the installation of the roller, much less the adequacy of the EMC installation manual. As such, McCracken's comments concerning the installation of the roller and the adequacy of the EMC installation manual are clearly new opinions. Consequently, these new opinions should be excluded pursuant the pretrial order which provides "[t]he Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to witnesses and/or exhibits, without an order to do so issued on a motion for good cause."[4] These new opinions are after the deadline and no motion for good cause has filed concerning the inclusion of the "new" opinion.

Additionally, while McCracken commented on the lack of specificity in the installation manual regarding the installation process for the brake pedal extension, he admitted that the alleged inadequacy of the instructions is merely a thought and that "it is just not – in my mind, it is not adequate."[5] What is in McCracken's mind is not a thought process, a standard or based on any methodology, much less accepted methodology. Rather, such comments are merely

---

[3] See Doc. No. 40-8, McCracken Report.
[4] See Doc. No. 9, Scheduling Order at pg. 3.
[5] See Exhibit "A," Deposition of Wayne McCracken, at pg. 374, lines 7-23.

speculation and no more that "because I said so logic," which is inadmissible. Support for this conclusion may be found in Gen. Elec. Co. v. Joiner, 522 U.S. 136 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

### B. Plaintiffs Failed to Address McCracken's Lack of Qualifications to Offer an Opinion on the Installation Manual

One of the challenges to McCracken's New Opinion concerning the EMC installation manual was that McCracken did not have the requisite knowledge, skill, experience, training or education on which to base an opinion that he developed on the night before his deposition.[6] Plaintiffs' opposition states that McCracken "has evaluated engineering principles related to design, installation, construction, composition, reconstruction, braking, and dynamic/control issues in over a thousand cases over his career."[7] Absent from plaintiffs' opposition is any attempt to explain how McCracken is qualified to offer an expert opinion on how information should be communicated in an installation manual. Since McCracken is in no way qualified to offer any opinion on how information should be communicated in an installation manual, his opinions concerning the sufficiency of the installation manual should be stricken.

### C. The EMC Equipment Does Not Alter the OEM Equipment or Intent

Plaintiffs have asserted that since the McKinney van did not meet the minimum braking requirements set forth in FMVSS 105, which requires a deceleration rate of .5g on dry cement, there must have been some issue with respect to the mobility equipment or its installation.[8]

---

[6] Doc. No. 40, EMC's Motion for Summary Judgment at pp. 13-15. See also Doc. No. 44, EMC's Motion in Limine to Exclude Wayne McCracken at pg. 19.
[7] Doc. No. 58, plaintiffs' Opposition to EMC's Motion for Summary Judgment at pg. 6.
[8] Id. McCracken's opinions are the subject a Motion in Limine (Doc. No. 44).

3

However, the EMC equipment does not change the intent of the OEM (original equipment manufacturer). That is, whatever the intent of Ford is with respect to the amount of deceleration the brakes in the van should apply, would not be in any way affected by the EMC equipment. This crucial fact is undisputed.

On behalf of EMC, Phil Nuza testified that "[w]e don't alter the OEM intent, so all of the like dynamic braking and radar detecting stuff all still operates just as if we weren't there."[9] More importantly, plaintiffs' expert, McCracken agreed and testified:

> Q. Would you agree that the EMC equipment does not change the intent of the OEM equipment?
>
> A. I would agree to that.
>
> Object to form.[10]

Thus, it is undisputed that braking capability of subject van is unchanged after the installation of the EMC equipment since all agree that the EMC equipment does not change the intent of the OEM equipment.

### D.  Subsequent Addition of the Aluminum Extension to the Gas Brake Lever Bars any Defect in Design or Defect in Manufacturing Claim Against EMC

McCracken testified that "the installation of the aluminum extension bar was a change in design of the gas brake system designed by EMC."[11] The change in design in the gas brake system is significant in light of McCracken's opinion that "the geometry of the system is going to be radically changed by this extender bar" and [m]ore probably than not contributed, yes."[12]

---

[9] See Exhibit "B," Deposition of Phil Nuza at pg. 97, lines 5-11.

[10] See Exhibit "A," Deposition of Wayne McCracken, pg. 129, line 25 – pg. 130, line 5.

[11] Id. at pg. 165, lines 8 – 11. The installation of the aluminum bar was done without the knowledge or consent of EMC and was contrary to the EMC installation manual. See Exhibit "A," Deposition of Wayne McCracken, at pg. 163 line 17 – pg. 165, line 10.   See also Exhibit "C," Deposition of Bryce McKinney at Exhibit No. 1, photograph of the aluminum extension bar (EMC04080).

[12] See Exhibit "A," Deposition of Wayne McCracken at pg. 276, line 14 – pg. 277, line 3.

4

Plaintiffs' attempt to diminish the impact McCracken's statement on their product liability claim against EMC by asserting the aluminum bar was only a contributing factor.[13]

To assert a design or manufacturing defect claim against EMC, the characteristic of the product that renders it unreasonably dangerous in design or construction must exist at the time the product left the control of its manufacturer. See R.S. 9:2800.54. Here, McCracken testified that the aluminum bar changed the design of the gas brake system and this design change was, according to McCracken, a contributing factor to the accident. Simply stated, since the addition of the aluminum bar was not part of the original EMC equipment, but instead was a design change in the gas brake system which contributed to the accident, EMC cannot be held liable for a defect in the gas brake system. See R.S. 9:2800.54.

### E. Testing

Prior to shipment to Superior Van and Mobility, L.L.C. ("Superior"), the Steering Servo Motor and the Gas/Brake Servo motor were tested by EMC's supplier, Cleveland Motion Controls, and EMC.[14]

Before completing the installation procedure, Stephen Angelloz ("Angelloz") performed an inspection of the gas brake system and, subsequent to completing the modification, but prior to delivering the van to the McKinneys, Angelloz completed the performed the Final Testing Procedures and completed the Warranty Validation.[15] In accordance with the Final Testing

---

[13] See Doc. No. 55, plaintiff's Opposition to EMC's MSJ regarding Non-LPLA Claims at pg. 17.
[14] See Exhibit "B," Deposition of Phil Nuza pg. 69, line 8 -11 and EMC00114, EMC00115, EMC00131, and EMC00132, which are excerpts from Exhibit 7 to the Deposition.
[15] See Exhibit "D," Deposition of Stephen Angelloz, at pg. 287, lines 1-11 and Superior's <u>EMC AEVIT Gas/Brake System</u> In-Process/Final Inspection/Quality Control Checklist, which is an excerpt from Exhibit 25 to the Deposition; and Deposition of Stephen Angelloz, at pg. 94, line 3 – pg. 95, line 12 and Warranty Validation (Superior Van 00007 – Superior Van 00008), which are excerpts from Exhibit 10 to the Deposition.

5

3291356 v1

Procedure, Angelloz completed thirteen different test procedures on for the gas brake system, including a fifty mile test drive so that the gas brake system test could be performed.[16]

Once the Final Testing Procedures were completed, the McKinneys took possession of the van on or about November 3, 2014.  Bryce McKinney operated the Ford van for almost five years and drove the van for more than 67,000 miles before the October 16, 2019 accident.[17] During the five years he operated the van, Bryce McKinney never experienced an alleged failure of the brakes to respond while he was operating the subject van as alleged in the instant matter. Moreover, when Bryce McKinney had the lift serviced on October 8, 2019, just eight days before the accident, no one advised Superior of any issues with the brakes.[18]   Hence, the testing of the equipment by EMC, the in process and final testing of the van by Superior, and Bryce McKinney's operation of the van for almost five years and more than 67,000 miles before the October 16, 2019 accident, demonstrate the van was tested and operated as intended.

### F.  Non-Applicable Cases

Plaintiffs' reliance on MacDonald v. Monsanto, 68 F.3d 470, 1995 WL 581942, (5th Cir. 1995) and In re FEMA Trailer Formaldehyde Products Liability Litigation, 2009 WL 2382773 (E.D. La. 2009) is misplaced.

Plaintiffs still bear the burden of proof as to a design defect and construction defect claim.  In MacDonald, the court noted that since there was "no allegation that the herbicide 2, 4-D allegedly manufactured by Dow and used by plaintiff was defective because it differed from other 2, 4-D manufactured by Dow.  Thus, this theory is not available to plaintiffs."  1995 WL

---

[16] Id.
[17] See Exhibit "E," Superior Invoice for worked performed on the Braun lift on October 8, 2016, and the Work Performed Time Ticket, which shows the mileage at 67,408 miles, which are excerpts from the Deposition of Brice McKinney at Exhibit 11 (Superior Van – 00076 – Superior Van– 00079).
[18] See Exhibit "D," Deposition of Stephen Angelloz at pg. 268, line 18 – pg. 269, line 1.

6

581942 at *2. Further, as to the design claims under the LPLA, the court observed that the plaintiffs still must show "an alternative design actually already existed at the time the product left the manufacturer's control. Id. Finally, contrary to plaintiffs' assertions, the court did not reason that the plaintiff could prove a product defect by identifying "a particular test which was done improperly or which was not done, and would have produced results which would have prevented [the plaintiffs'] injuries, but instead specifically noted that this was simply pointed out by Dow in response to plaintiffs' claims.[19] 1995 WL 581942 at *3. In sum, any alleged lack of testing claim is neither a cognizable claim under the LPLA, nor does it relieve the plaintiffs of their burden of proof for a design or manufacturing defect under the LPLA.

In re FEMA Trailer Formaldehyde Products Liability Litigation, in addressing the defendant's Rule 12(b)(6) Motion to Dismiss the failure to test allegation in the complaint was sufficient to survive a dismissal. While the court discussed the plaintiffs' "failure to test" allegations, the court never held that plaintiffs were relieved of their burden of proof for a design or manufacturing defect under the LPLA.

Finally, the factual scenario of MacDonald and In re FEMA Trailer Formaldehyde Products Liability Litigation must be noted. Both cases involve a manufacturer of a product used in the condition it was when it left the control of the manufacturer. However, in the instant case, the EMC equipment was shipped to Superior, installed in the McKinney van by Superior, and tested by Superior during and after the installation.[20]

---

[19] See Doc. No. 58. Plaintiffs' Opposition Memorandum at pg. 9.
[20] See Exhibit "D," Deposition of Stephen Angelloz, at pg. 287, lines 1-11 and Superior's EMC AEVIT Gas/Brake System In-Process/Final Inspection/Quality Control Checklist, which is an excerpt from Exhibit 25 to the Deposition; and Deposition of Stephen Angelloz, at pg. 94, line 3 – pg. 95, line 12 and Warranty Validation (Superior Van 00007 – Superior Van 00008), which are excerpts from Exhibit 10 to the Deposition.

3291356 v1

Plaintiffs also attempt to rely on Paul Mazant v. Visioneering, Inc., 250 Fed. Appx. 60 (5th Cir. 2007), to assert that Superior's installation of the EMC equipment should not bar a claim against EMC.  Mazant involved design obligations against two companies, Visioneering, Inc. and Lockheed Martin Manned Space Systems. The instant claim; however, involves a design claim against EMC (inadequate installation manual) and an installation claim against Superior.

This is exactly the scenario in Pickett v. RTS Helicopter, 128 F.3d 925 (5th Cir. 1997), where the Fifth Circuit noted that under either theory (design or warning), the plaintiffs must also establish that the actual failure of the seatbelt (and thus the decedent's death) was proximately caused by the capability of improper assembly.  Next, the court further observed where "an accident results from two negligent acts, 'one more remote and one an intervening cause, the presence of the intervening cause prevents a finding of liability on the one responsible for the more remote cause.'" Id.

> Applying Graham v. Amoco Oil Co., 21 F.3d 643 (5th Cir.1994), the court observed:
>
> [I]t is clear that the failure of the seat belt in this case was not proximately caused by the mere capability of misassembly inherent in its design. Actual failure simply could not have occurred without actual negligent misassembly, here, presumably by Aircraft Belts, and this actual misassembly is an intervening cause that breaks the "natural and continuous sequence" of events flowing from the design. . . . Although PSC, the seatbelt manufacturer, may have established a prerequisite to the eventual injury by designing a seat belt that *could* be misassembled, PSC did not proximately cause that injury because, as a matter of law, the *actual* misassembly sufficiently intervened to break the causal chain. For this reason, the Picketts' LPLA claims cannot succeed. Pickett, 21 F.3d at 929. (Emphasis in original.).

No matter whether the plaintiffs' claims are premised on design or warning, the installation of the gas brake system was done by Superior.  In applying Pickett to the instant matter, any alleged improper installation by Superior sufficiently intervened and for this reason plaintiffs' LPLA claims in the instant matter cannot succeed either.

8

### G.  FMVSS 105 Standard

McCracken alleges in his report that the McKinney van did not meet the braking requirement of a deceleration rate of .5g set for in FMVSS 105.[21]  However, in his deposition, McCracken admitted the .5g deceleration rate is with a specified surface of dry pavement or an equivalent, not wet grass as was the case in the instant matter.[22]  Likewise, he admitted that he did not know the declaration rate of the McKinney van on dry pavement.[23]  Consequently, McCracken has no foundation for his opinion that the van did not meet FMVSS 105, a standard for deceleration on dry pavement.

### H.  Non-LPLA Claims

As set forth in EMC's Motion for Summary Judgment on Non-LPLA claims, plaintiffs do not have negligence claim against EMC because they have asserted that Bryce McKinney's injuries are the result of a defective product.[24]  Plaintiffs' nevertheless continue to assert that they are entitled to recover for negligent repair and maintenance.  However, plaintiffs have failed to put forth any evidence to support this claim.

"[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movants burden." Douglass v. United Serv. Auto. Assn., 79 F.3d 1415, 1429 (5th Cir. 1996).  Rather, the non-moving party must direct the Court's attention to admissible evidence in the record which demonstrates that it can convince a "fair minded jury" that it is entitled to a verdict in its favor.  Conti Community Serv., Inc. v. Ragan, 63 F.3d 438, 411 (5th Cir. 1995); International Shortstop, Inc. v. Rally's Inc., 939 F.2d 1257, 1263 (5th Cir. 1991).  The non-moving party must identify specific evidence in the record and articulate the precise manner

---

[21]See Doc. 40-8, McCracken Report at pg. 6.
[22] See Exhibit "F," State Police Report at pg. 1.
[23] See Exhibit "A," Deposition of Wayne McCracken, pg. 127, line 14 – pg. 130, line 5.
[24] See Doc. No. 43, EMC's Motion for Summary Judgment regarding Non-LPA Claims.

in which that evidence supports its claim.  <u>Ragan</u>, 63 F.3d at 411.  While the Court will resolve factual controversies in favor of the non-moving party, the Court will not assume the non-moving party could or would prove necessary facts in the absence of proof.  <u>Little Liquid Air. Corp.</u>, 37 F.3d at 1075 (5th Cir. 1994).  Since there is insufficient evidence to establish negligence and plaintiffs will bear the burden of proof at trial, summary judgment is appropriate.  See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265. (1986).

## CONCLUSION

For the foregoing reasons, the McKinneys cannot establish the necessary elements to support their claims that the EMC equipment was defective in design or manufacture or that EMC was negligent.  As such, EMC's Motion for Summary Judgment should be granted and the McKinneys' claims should be dismissed.

Respectfully submitted,

**BLUE WILLIAMS, L.L.P.**

*/s/ Paul D. Palermo*
**PAUL D. PALERMO (#19725)**
**CRAIG V. SWEENEY (#23954)**
**ELIZABETH S. SCONZERT (#30049)**
3421 N. Causeway Blvd., Suite 900
Metairie, Louisiana  70002
Telephone: (504) 831-4091
Facsimile: (504) 837-1182
Attorneys for defendant,
Electronic Mobility Controls, L.L.C.

### CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of January 2021, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all known counsel of record by operation of the Court's electronic filing system.

*/s/ Paul D. Palermo*

3291356 v1