UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBIN MCKINNEY, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 20-1169** |
| **SUPERIOR VAN & MOBILITY, LLC, ET AL.** | **SECTION I** |

## ORDER & REASONS

This products liability case arose out of a single-vehicle accident in Tangipahoa Parish. Bryce McKinney ("Bryce") was injured after his van, which was equipped with defendant Electronic Mobility Control's ("EMC") steering, braking, and throttle controls,[1] veered off the road and struck a tree. Acting on Bryce's behalf, Bryce's parents, Robin and Jeffery McKinney (the "McKinneys"), sued EMC and Superior Van and Mobility ("Superior"), which installed the controls in the van.[2]

Before the Court is EMC's motion[3] for partial summary judgment as to the McKinneys' claims that do not arise out of either the Louisiana Products Liability Act ("LPLA") or Louisiana's redhibition articles. EMC argues that such non-LPLA claims are barred by the LPLA's exclusive-remedy provision. EMC does not challenge the McKinneys' LPLA or redhibition claims in the present motion.[4] The McKinneys filed

---

[1] R. Doc. No. 43-2, at 1 ¶ 1.
[2] R. Doc. No. 1-2, at 2 ¶ 9.
[3] R. Doc. No. 43.
[4] EMC filed a separate motion for summary judgment as to the McKinneys' "product defect claims and lack of causation," *see* R. Doc. No. 40, which the Court does not address here.

2

an opposition,[5] to which EMC replied.[6] The Court grants the motion for the reasons below.

## I.

In 2007, Bryce was partially paralyzed while playing football.[7] He received a "cervical fusion," which left him with limited mobility in his "upper extremities."[8] In 2014, Bryce and his father purchased a van from Superior, in which Superior had installed computerized mobility controls that would enable Bryce to operate the van himself.[9] Those mobility controls, called the Advanced Electronic Vehicle Interface Technology ("AEVIT"), were designed and manufactured by EMC.[10]

The exact circumstances of the van accident are immaterial to the Court's present analysis, but they provide helpful context. The McKinneys allege that the AEVIT controls malfunctioned while Bryce was driving the van (which was towing a utility trailer) in October 2019; that malfunction caused the van to drift right across a lane of traffic, leave the road, and travel "approximately 100 feet before striking a tree with its front bumper."[11] At some point "after June" in 2019, Bryce had a similar malfunction while turning onto a road from a stop, which resulted in no injuries.[12]

---

[5] R. Doc. No. 55.
[6] R. Doc. No. 69.
[7] R. Doc. No. 43-4, at 2.
[8] *Id.*
[9] R. Doc. No. 1-2, at 3 ¶ 9.
[10] R. Doc. No. 43-2, at 1 ¶ 1.
[11] R. Doc. No. 1-2, at 4 ¶¶ 14, 16.
[12] R. Doc. No. 55-3, at 2.

The AEVIT controls save "operation logs," which record "the events that are happening" within the AEVIT system (*e.g.*, computing errors).[13]  Superior occasionally sent these operation logs to EMC, and EMC used them to diagnose software issues.[14]  During a maintenance visit on June 18, 2019, in which Bryce brought the van to Superior for service, a Superior technician sent an operation log to EMC.[15]  In response, EMC provided a software update, which the Superior technician then installed.[16]  The technician performed additional physical maintenance tasks on the van—he "recalibrated the gas/brake system and then also checked [the] battery voltage and the connections of the battery, mak[ing] sure everything was tight."[17]

Based on the relationship between EMC and Superior, the McKinneys argue that EMC is more than a "manufacturer" of the AEVIT system.  Instead, EMC is "a maintenance provider," and any breach of duty within that role renders EMC liable in *tort*—rather than simply as a manufacturer of a defective product under LPLA.[18]  EMC, on the other hand, argues that because the McKinneys' suit claims damage due to an allegedly defective product (the AEVIT system), their exclusive remedy against EMC is under the LPLA—as is the case for any plaintiff suing a manufacturer for its

---

[13] R. Doc. No. 55-2, at 6.
[14] *Id.*; *id.* at 9.
[15] *Id.* at 2–3.
[16] *Id.*
[17] *Id.* at 3.
[18] R. Doc. No. 55, at 4.

3

defective product. Therefore, EMC argues, any non-LPLA (and non-redhibition) claims[19] raised by the McKinneys against EMC must be dismissed.

As explained further below, because counsel have not directed the Court to, and the Court has not independently found, any Louisiana Supreme Court or other appellate court cases holding a manufacturer liable under *both* an LPLA products liability theory *and* a general negligence theory, the Court agrees with EMC; the LPLA's text is clear.

## II.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory

---

[19] EMC correctly recognizes that the LPLA does not bar claims arising under the redhibition articles; accordingly, EMC does not challenge the McKinneys' redhibition claims here. R. Doc. No. 43-1, at 7 ("EMC prays that its Motion for Summary Judgment be granted and that Plaintiffs' non-LPLA claims, except for redhibition, be dismissed.").

4

allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *See Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

### III.

### A.     Overview of the LPLA

The Court begins with a brief overview of the LPLA.  To succeed on a LPLA claim, a plaintiff must prove four elements:

> (1) that the defendant is a manufacturer of the product; (2) that the [plaintiff's] damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the [plaintiff's] damage arose from a reasonably anticipated use of the product by the [plaintiff] or someone else.

*Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 260–61 (5th Cir. 2002) (citing La. Stat. § 9:2800.54(A)); *see also Stewart v. Capital Safety USA*, 867 F.3d 517, 520 (5th Cir. 2017) (reciting the same four elements).

A product is defective under the LPLA "if and only if" it is "unreasonably dangerous" (1) in construction or composition, (2) in design, (3) because of inadequate warning, or (4) because of nonconformity to an express warranty.  *Rhodes v. Covidien LP*, No. 18-10667, 2019 WL 2162845, at *2 (E.D. La. May 17, 2019) (Vance, J.) (internal citation omitted).  "Thus, the LPLA limits the plaintiff to four theories of recovery: construction or composition defect, design defect, inadequate warning, and breach of express warranty." *Id.*

The LPLA provides that those four theories of recovery are exclusive.  That is, a plaintiff suing a manufacturer based on damages caused by its product may proceed only under the LPLA.  This exclusivity is "well-established" in both the statute and attendant case law.  *Rivers v. Remington Arms Co.*, No. 17-17124, 2018 WL 746392,

at *2 (E.D. La. Feb. 7, 2018) (Africk, J.) (citing *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997)).

Start with the statutory text.  The statute's exclusivity provision provides that the LPLA "establishes the exclusive theories of liability for manufacturers for damages caused by their products." La. Rev. Stat. § 9:2800.52.  It clarifies that a plaintiff "may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter." *Id.*  "Damage" is defined as "all damage caused by a product, including survival and wrongful death damages, for which Civil Code Articles 2315, 2315.1, and 2315.2 allow recovery." *Id.* § 9:2800.53(5).  Damage also includes "damage to the product itself and economic loss arising from a deficiency in or loss of use of the product[, but] only to the extent that Chapter 9 of Title VII of Book III of the Civil Code, entitled 'Redhibition,' does not allow recovery for such damage or economic loss." *Id.*

The LPLA defines a "[m]anufacturer" as "a person or entity who is in the business of manufacturing a product for placement into trade or commerce." La. Rev. Stat. § 9:2800.53(1).  A manufacturer also includes, *inter alia*, anyone "who incorporates into the product a component or part manufactured by another manufacturer." *Id.* § 9:2800.53(1)(c).[20]  To bring all that together, "[m]anufacturing

---

[20] A "[p]roduct," in turn, is "a corporeal movable that is manufactured for placement into trade or commerce, including a product that forms a component part of or that is subsequently *incorporated into another product* or an immovable." La. Rev. Stat. § 9:2800.53(3).

7

a product means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product." *Id.* § 9:2800.53(1).

Following that clear language, Louisiana state courts (including the Louisiana Supreme Court), U.S. District Courts, and the Fifth Circuit have almost uniformly held that the LPLA bars any non-LPLA claim (except for claims arising under the redhibition articles) against a manufacturer for damage caused by its products. *See, e.g.*, *Reynolds v. Bordelon*, 172 So. 3d 607, 612, 615 (La. 2015) (refusing to "accept a *general* alleged warranty for purposes of an *express* warranty claim" under the LPLA (first emphasis added)); *Payne v. Gardner*, 56 So. 3d 229, 231 (La. 2011) ("[P]laintiff's exclusive remedy against [the manufacturer of an oil pumping unit] sounds in products liability as governed by the [LPLA]."); *Touro Infirmary v. Sizelar Architects*, 947 So. 2d 740, 744 (La. Ct. App. 4th Cir. 2006) (noting that "the LPLA subsumes all possible causes of action" except for those found in the redhibition articles); *Scianneaux v. St. Jude Medical S.C., Inc.*, 961 F. Supp. 2d 808, 811–812 (E.D. La. 2013) (Vance, J.) (rejecting the plaintiff's "freestanding theories" of, *inter alia*, negligence); *Automatique New Orleans, Inc. v. U-Select-It, Inc.*, No. 94-3179, 1995 WL 491151, at *3 n.2 (E.D. La. Aug. 15, 1995) (Sear, J.) (finding it "inappropriate to consider an independent negligence claim . . . because the LPLA is Automatique's exclusive remedy against the defendants in this case"); *Pitre v. Yamaha Motor Co.*, 51 F. Supp. 3d 644, 658–61 (E.D. La. 2014) (Brown, J.) (rejecting, *inter alia*, a negligence claim against the manufacturer); *Grenier v. Med. Engineering Corp.*, 99 F. Supp. 2d 759, 763 (W.D. La. 2000) (same), *aff'd*, 243 F.3d 200 (5th Cir. 2001); *Stahl*,

8

283 F.3d at 261 (finding no "'intentional acts' exception to the [LPLA's] exclusive remedy provision"); *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997) ("Louisiana law eschews all theories of recovery in this case except those explicitly set forth in the LPLA.").

The only exception (if it can be called that) to this general rule is very narrow: a manufacturer may be held "vicariously liable for their employees' negligence." *McCleary v. Elekta*, No. 19-52, 2019 WL 5295699, at *3–4 (W.D. La. Oct. 18, 2019) (collecting cases and rejecting the plaintiff's attempt to hold the defendant liable under *both* the LPLA and general negligence theories). This is less an exception and more an embrace of plain old negligence: in such cases, the plaintiffs allege their damage was caused not "*by a product*," but instead by "*the negligent use of [the manufacturer's] product* by one of its employees." *Lavergne v. Am.'s Pizza Co.*, 838 So. 2d 845, 848 (La. Ct. App. 3d Cir. 2003) (emphasis in original); *see also Crawford v. Dehl*, No. 08-463, 2008 WL 4186863, at *3 (W.D. La. July 21, 2008) (holding that, where an LPLA claim is not asserted, the LPLA does not bar a claim against the manufacturer for negligently handling its product), *report and recommendation adopted by* 2008 WL 5746933, at *1 (W.D. La. Sept. 8, 2008)); *Duplantis v. Miller*, 159 So. 3d 1153, 1157–58 (La. Ct. App. 3d Cir. 2015) (finding LPLA did not bar claim based not on damages caused by the product itself, but by "defective workmanship in installing" the product). Such liability attaches irrespective of whether the product is "unreasonably dangerous" under the LPLA.

B.     Arguments & Analysis

Here, the McKinneys assert that the "Van's malfunctioning steering controls"—equipped with EMC's AEVIT components—caused Bryce's accident.[21] They claim that the "actions of Defendants in failing to appropriately respond and correct" the allegedly malfunctioning controls "constitute negligence and breaches of duties" owed to Bryce.[22] They pleaded their claims "under the Louisiana Products Liability Act and under any other state or federal statute which may be applicable."[23]

But the McKinneys go further: they argue EMC should be liable under the LPLA *and* for negligence because EMC wears "two hats"—as a product manufacturer and a "maintenance provider."[24] They cite *Crawford* to argue for a broader exception than the one described above—that the LPLA bars non-LPLA claims only when the defendant's "capacity as manufacturer is essential" to the claim.[25] According to the McKinneys, this would avoid the "absurd consequences" that purportedly result from applying the plain terms of the LPLA.[26] Otherwise, they claim, EMC would "be able to escape liability for its negligence simply because it happens to be the manufacturer of the product."[27] Tellingly, as previously noted, the McKinneys cite no case

---

[21] R. Doc. No. 1-2, at 9 ¶ 45.
[22] *Id.*
[23] *Id.* at 9 ¶ 48.
[24] R. Doc. No. 55, at 10.
[25] *Id.* at 5–6 (quoting *Crawford*, 2008 WL 4186863, at *3).
[26] *Id.* at 9.
[27] *Id.* That is wrong-headed. EMC would not "escape liability" just because an independent negligence claim could not be asserted *alongside* an LPLA claim. Unlike the manufacturer in *Crawford*, EMC is not using the LPLA to bar *all* of the McKinneys' claims. *See Crawford*, 2008 WL 4186863, at *1 ("JDI contends that the exclusivity provision of [LPLA] precludes each of Crawford's claims."). EMC does not

10

permitting a plaintiff to sue a manufacturer under *both* the LPLA *and* general negligence theories.

In reply, EMC argues that the McKinneys are wrong (1) on the law, in that their two-hat theory is supported by neither the LPLA nor caselaw, and (2) on the facts, in that they overstate EMC's maintenance role. Legally, EMC argues that the McKinneys' reliance on *Crawford* is misplaced because there was no "LPLA claim" even alleged in that case; instead, the plaintiff sued under a general negligence theory.[28] Consequently, EMC argues that *Crawford* is distinguishable. EMC also cites *McCleary*, which rejected the "two hat" argument that the McKinneys now make—that a manufacturer can be liable "for both general negligence claims and LPLA" claims. *McCleary*, 2019 WL 5295699, at *4.

Factually, EMC argues that once the AEVIT components were installed by Superior, EMC's role is "limited to consulting" with Superior, which performs the physical maintenance.[29] Hence, although EMC "review[s] the operation logs downloaded and sent by Superior," it does not maintain its products—Superior does

---

challenge the McKinneys' LPLA claim here. R. Doc. No. 43-1, at 6–7. That fact clearly distinguishes *Crawford* from this case.
[28] R. Doc. No. 69, at 8 (quoting *Crawford*, 2008 WL 4186863, at *9) (emphasis added).
[29] *Id.* at 2. EMC points to the deposition of their corporate representative, who testified that "the end user is Superior's customer, they are responsible for the customer. It's [EMC's] responsibility to take care of Superior. So if they contact us, we absolutely will do everything we can in our power to get it resolved as quickly as possible." *See id.* (quoting R. Doc. No. 69-3, at 2).

that.[30] They also claim that Bryce had no direct contact with EMC, which militates against finding that EMC "maintained" his van.[31]

EMC has the better side of the argument. This Court, sitting in diversity, must faithfully apply the law of Louisiana. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). As noted above, the McKinneys point to no cases of the Louisiana Supreme Court, nor of the appellate courts, adopting their novel interpretation of the LPLA, and the Court has found none. Absent that, this Court must make an "*Erie* guess." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). That is, this Court must determine how the Louisiana Supreme Court "would resolve the issue if presented with the same case." *Id.* In doing so, the Court "must employ Louisiana's civilian methodology, whereby [it] first examine[s] primary sources of law: the constitution, codes, and statutes." *Id.* However, "[j]urisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana." *Id.* (quoting *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.,* 179 F.3d 169, 175 (5th Cir. 1999)) (emphasis in original).

Employing that methodology here, the Court emphasizes that the LPLA's exclusivity provision lays down a clear mandate: "a [plaintiff] may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability

---

[30] *Id.*

[31] *Id.* (citing R. Doc. No. 69-2, at 4). The Court notes that the relevant portion of Bryce's deposition transcript provided by EMC does not directly support this—the question asked to Bryce was "[a]t any point in time either before or after you took possession of the van, have you ever spoken with anyone at EMC[.]" Bryce's answer, however, is not in the record. *See* R. Doc. No. 69-2, at 4. That said, the McKinneys have not disputed this point.

that is not set forth in this Chapter." La. Rev. Stat. § 9:2800.52. It reserves the right of an employee to sue "a manufacturer who is the employee's employer," *id.*, but that does not apply here. And, while it also reserves the rights of plaintiffs to sue six specified classes of defendants (*e.g.*, professionals, farmers, ranchers, etc.),[32] it expressly limits that exclusion—rendering it inapplicable if the defendant "assume[s] the status of a *manufacturer* as defined in" the LPLA. *Id.* (citing La. Rev. Stat. § 9:2800.53(1)) (emphasis added). It provides no other exceptions, exclusions, or caveats for claims against manufacturers.[33]

---

[32] The relevant portion of the LPLA provides:
> This Chapter does not apply . . . to the rights of a claimant against the following, unless they assume the status of a manufacturer as defined in R.S. 9:2800.53(1):
> (1) Providers of professional services, even if the service results in a product.
> (2) Providers of nonprofessional services where the essence of the service is the furnishing of judgment or skill, even if the service results in a product.
> (3) Producers of natural fruits and other raw products in their natural state that are derived from animals, fowl, aquatic life, or invertebrates, including but not limited to milk, eggs, honey, and wool.
> (4) Farmers and other producers of agricultural plants in their natural state.
> (5) Ranchers and other producers of animals, fowl, aquatic life, or invertebrates in their natural state.
> (6) Harvesters and other producers of fish, crawfish, oysters, crabs, mollusks, or other aquatic animals in their natural state.

La. Rev. Stat. § 9:2800.52.

[33] The Court notes, as it did above, that the LPLA's definition of "[d]amage" does not bar claims that arise out of the redhibition articles. *See* La. Rev. Stat. § 9:2800.53(5); *see also C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH*, No. 10-4441, 2013 WL 990026, at *5 (La. E.D. March 13, 2013) (Morgan, J.) (describing how redhibition claims are not barred by the LPLA).

13

All told, the LPLA's text evinces a clear intent to limit the theories of liability available against manufacturers sued for damage caused by their products. Therefore, even if *Crawford* could be read to support the McKinneys' two-hat theory—which is doubtful, because the plaintiff there asserted *only* a negligence claim, not a negligence claim alongside an LPLA claim—that theory contradicts the plain language of the LPLA. *See McCleary*, 2019 WL 5295699, at *3–4 (making an *Erie* guess to conclude the LPLA's "clear" language bars independent negligence claims against a manufacturer for damage done by a product). Making an *Erie* guess based on the LPLA's plain text, this Court concludes that the Louisiana Supreme Court would not accept the McKinneys' two-hat theory.

Moreover, the weight of authority interpreting the LPLA, in cases with similar facts to this one, likewise rejects the McKinneys' theory. In *Automatique*, for example, the plaintiff sued both a vending-machine manufacturer and the distributor of a defective component installed in the vending machine (both defendants were considered "manufacturers" under the LPLA). *Automatique*, 1995 WL 491151, at *2. Like here, the component manufacturer undertook duties to replace the defective components upon learning of the defect. *Id.* at *1. But the court dismissed the plaintiff's general negligence claim against the component manufacturer, finding that the plaintiff was limited to a failure-to-warn theory under the LPLA. *Id.* at *3 n.2. Similarly, in *Boudreaux*, the plaintiff alleged that the defendant-manufacturer "negligently advised" the plaintiff's employer that a defective clutch was "adequate for its intended use," despite allegedly knowing otherwise. *Boudreaux v. Deutz Corp.*,

14

No. 09-6759, 2010 WL 1838650, at *3 (E.D. La. May 3, 2010) (Berrigan, J.). The court dismissed the claim because "negligence and negligent misrepresentation are no longer viable independent theories against a manufacturer." *Id.* And in *Stroderd*, the court dismissed the plaintiffs' "negligent repair" claim against the manufacturer of the plaintiffs' motorcycles, reasoning that the "drafters of the LPLA sought to strictly delimit possible bases of liability for manufacturers," so they "set out four distinct and exclusive theories of liability" under the LPLA. *Stroderd v. Yamaha Motor Corp.*, No. 04-3040, 2005 WL 2037419, at *2 (E.D. La. Aug. 4, 2005) (Fallon, J.).

None of the foregoing, however, renders a negligence theory *irrelevant* to proving a claim under the LPLA; it simply forecloses an independent claim for negligence against a manufacturer for damage caused by its product. Indeed, "the statutory ways of establishing that a product is unreasonably dangerous are predicated on principles of strict liability, negligence, or warranty." *Creighton v. Fleetwood Enters., Inc.*, No. 07-7194, 2008 WL 1746953, at *3 (E.D. La. Apr. 11, 2008) (Vance, J.). But "neither negligence, strict liability, nor breach of express warranty is any longer viable as an *independent* theory of recovery against a manufacturer." *Id.* (citing *Automatique*, 1995 WL 491151, at *3 n.2) (emphasis in original). Consequently, allegations of negligence may be "germane to [a plaintiff's] products liability claim," but a plaintiff cannot maintain an "independent claim[] of negligence" against a manufacturer. *Id.*

Applying that here, the McKinneys assert that Bryce was harmed by EMC's allegedly defective product, the AEVIT system. Since EMC is the manufacturer of AEVIT, the McKinneys are confined to the LPLA's four theories of liability for damage caused by that product—design defect, construction defect, failure to warn, and breach of express warranty. Their allegation that EMC negligently repaired AEVIT may be germane to proving one of those LPLA theories, but the LPLA prevents them from maintaining it as an independent claim.

## IV.

Accordingly,

**IT IS ORDERED** that EMC's motion for partial summary judgment as to the McKinneys' non-LPLA claims and any claim not arising under the redhibition articles is **GRANTED**. The McKinneys' non-LPLA claims and any claim not arising under the redhibition articles are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, April 1, 2021.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**